IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| ROBERT WILLICH, | § | |
| Plaintiff, | § | |
| v. | § | 6:16-CV-340-RP-JCM |
| SANDERSON FARMS, INC., (PROCESSING DIVISION) | § | |
| Defendant. | § | |

**ORDER**

Before the Court is Plaintiff Robert Willich's ("Willich") Motion for Equitable Relief, (Dkt. 59), and the parties' responsive briefing. Willich sued Defendant Sanderson Farms, Inc. (Procession Division) ("Sanderson Farms") for unlawfully discriminating against him on the basis of his disability, failing to make reasonable accommodations for him, and unlawfully retaliating against him. (Orig. Pet., Dkt. 1-1, at 6–7). On December 13, 2017, after a two-day jury trial, a jury found in Willich's favor on each claim. (Verdict Form, Dkt. 58). In the instant motion, Willich asks the Court to award him front pay in the amount of $131,028. (Mot. Equit. Relief, Dkt. 59, at 11). Sanderson Farms does not disagree that front pay is appropriate but argues in favor of a lower award in the amount of $64,397.71. (Resp. Mot. Equit. Relief, Dkt. 61, at 4). For the reasons discussed below, the Court finds that a front pay award of $110,900.67 is appropriate.

The Texas Labor Code provides that a court may grant appropriate equitable relief upon a finding that a defendant engaged in an unlawful employment practice. TEX. LAB. CODE § 21.258(a). Front pay is available as equitable relief in lieu of reinstatement. *Cox & Smith Inc. v. Cook*, 974 S.W.2d 217, 227 (Tex. App.—San Antonio 1998, pet. denied). When interpreting Texas' employment antidiscrimination statutes, courts may look to federal courts' interpretations of federal employment

1

antidiscrimination laws such as Title VII of the Civil Rights Act of 1964. *Stanley Stores, Inc. v. Chavana*, 909 S.W.2d 554, 562 (Tex. App.—Corpus Christi 1995, writ denied).

Although "reinstatement is generally the preferred remedy for a discriminatory discharge . . . front pay may be awarded if reinstatement is not feasible." *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 822 (5th Cir. 1990). There is no disagreement about the impossibility of reinstatement in this case. The current human resources manager in charge of hiring for Sanderson Farms' Waco plant testified at trial that Sanderson Farms would not rehire Willich. (Mot. Equit. Relief, Dkt. 59, at 5). Sanderson Farms does not dispute that reinstatement is not on the table. (*See* Resp. Mot. Equit. Relief, Dkt. 61). The Court therefore finds that reinstatement is not feasible.

Front pay is "a prospective make-whole remedy" that can "at best . . . only be calculated through intelligent guesswork." *Deloach*, 897 F.2d at 822. Recognizing the "speculative character" of awarding front pay, district courts are "accord[ed] wide latitude" in determining front pay. *Id.* When deciding whether to make a front pay award, courts consider: (1) the length of prior employment, (2) the permanency of the position held, (3) the nature of work, (4) the age and physical condition of the employee, and (5) the possible consolidation of jobs and the myriad other non-discriminatory factors which could validly affect the possible employment relationship. *Reneau v. Wayne Grifin & Sons, Inc.*, 945 F.2d 869, 871 (5th Cir. 1991). Front pay awards must be "carefully crafted to avoid a windfall to the plaintiff" because damages for employment discrimination are not meant to be punitive. *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 491 (5th Cir. 2007).

Based on the evidence presented, the Court finds that Willich is a 49-year-old man for whom his position at Sanderson Farms paying between $9.25 and $14.80 per hour, (Resp. Mot. Equit. Relief, Dkt. 61, at 3), was the highest-paying job he ever held. (Reply Mot. Equit. Relief, Dkt. 62, at 4). Despite working in a facility where the annual turnover rate exceeded 50 percent, (Resp. Mot. Equit. Relief, Dkt. 61, at 3), Willich worked the graveyard shift as a custodian for 30 months before

being terminated. (Reply Mot. Equit. Relief, Dkt. 62, at 4). Willich testified at trial that his criminal record limits his ability to find desirable employment and that he applied to work at Sanderson Farms because they would hire him in spite of his record.

Willich's employment experience since leaving Sanderson Farms is consistent with Willich's assertion that he viewed his job at Sanderson Farms as desirable. After being terminated from Sanderson Farms, Willich sought work at another poultry processing plant operated by Cargill. (Mot. Equit. Relief, Dkt. 59, at 4). All told, Willich applied to almost 90 jobs before finding work as a pizza delivery driver that pays him approximately $7,820 per year. (*Id.* at 8–9). His pizza-delivery job does not provide him with benefits. (*Id.* at 8). At the time he was terminated by Sanderson Farms, he earned $31,140 per year in wages and benefits. (*Id.*). Each of these facts suggest that Willich would have preferred to continue working for Sanderson Farms had he not been terminated. There is no evidence that any outside force such as companywide layoffs or plant relocation would have put Willich's position in jeopardy.

Willich asks the Court to award him front pay to account for five years of lost wages. (*Id.*). Although courts often award front pay for only one or two years, the Fifth Circuit has upheld awards covering a five-year period. *Deloach*, 897 F.2d at 822. Sanderson Farms objects that any more than two years would be too speculative because (1) Willich's conditional offer of employment at Cargill suggests that he will find comparable employment within five years and (2) the high turnover at Sanderson Farms' Waco plant suggests that it is unlikely that Willich would have continued in his position for another five years. (Resp. Mot. Equit. Relief, Dkt. 61, at 2–3). Neither of these facts, however, counsels in favor of a shorter front pay period.

With respect to the conditional offer of employment, Cargill withdrew its employment offer after reviewing Willich's medical records. (Reply Mot. Equit. Relief, Dkt. 62, at 4). Their decision can hardly be said to support the notion that Willich is likely to obtain comparable employment.

3

Moreover, the fact that Willich's relatively extensive job search ultimately yielded a position paying him a quarter of what he earned at Sanderson Farms also suggests that comparable employment will not be easy to come by.

As for the Waco plant's turnover rate, Willich does not appear to have been as likely as the average Sanderson Farms employee to quit his job. The job paid Willich relatively well, and he testified credibly to being glad to have the job. (*See* Reply Mot. Equit. Relief, Dkt. 62, at 4–5). The evidence does not support the conclusion that Willich would have left the job he had kept for 30 months had he not been injured and subsequently terminated.

Altogether, the evidence supports awarding front pay over a five-year period. Willich kept an unglamorous job for 30 months in a place where the majority of employees leave every year. Based on Willich's testimony, employment history, criminal history, and struggles to find comparable employment since his firing, Willich appears to have reasonably coveted the job for its salary and benefits. The "intelligent guesswork" required of the Court leads it to conclude that it is more likely that Willich would have remained at Sanderson Farms for another five years than that he would have left after two.

Having determined the period for Willich's front pay award, the Court must determine the amount of compensation Willich would have earned over that period. Willich asks the Court to assume that he would have received annual wage increases of 10 percent based on his average annual pay increase of 20 percent during his 30 months at Sanderson Farms. (Mot. Equit. Relief, Dkt. 59, at 8). The Court does not find that to be a reasonable expectation. More than half of Willich's wage increases came in his first 90 days as part of a standard introductory pay scale. (Resp. Mot. Equit. Relief, Dkt. 61, at 3). By the end of this first year, he was earning $14.35 per hour—96 percent of his final wage—and his only subsequent raise was part of a department-wide pay increase. (*Id.*). In the approximately two years since Willich's termination in October 2015, comparable

4

employees have seen a 2.25 percent pay increase. (*Id.* at 4). The Court will therefore calculate his projected earnings under the assumption that he would have seen his hourly wage increase by one percent annually.

Willich's wages and benefits at the time he was terminated were $31,140 per year. (Mot. Equit. Relief, Dkt. 59, at 8). Assuming a one-percent annual increase in his wages, his five-year total earnings would amount to $158,845. To prevent Willich from receiving a windfall, the Court must adjust his projected earnings by the wages he will earn annually in his current employment to determine a net annual award, which must then be discounted to present value. *See Deloach*, 897 F.2d at 823; *Jackson v. Host Int'l, Inc.*, 426 F. App'x 215, 223 (5th Cir. 2011). Willich's current wages total $7,820 per year; there is no evidence of whether and how his pay might rise, if at all. (Mot. Equit. Relief, Dkt. 59, at 8). Reducing Willich's front pay award by $7,820 per year and applying the parties' agreed discount rate of 2.59 percent,[1] the Court finds the net present value of Willich's front pay award to be $110,900.67.[2]

## CONCLUSION

For these reasons, the Court **ORDERS** that Willich's Motion for Equitable Relief, (Dkt. 59), is **GRANTED** to the extent that the Court will grant Willich's request for a front pay award, albeit only in the amount of $110,900.67, rather than for the amount Willich requests.

**SIGNED** on April 17, 2018.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[1] Sanderson Farms does not oppose Willich's proposed discount rate of 2.59 percent per year, which is based on the current yield of a 20-year United States Treasury bond. (Resp. Mot. Equit. Relief, Dkt. 61, at 4; Mot. Equit. Relief, Dkt. 59, at 9).

[2] The Court computes the net present value using the following formula: $\sum_{t=1}^{N} E_t / (1 + .0259)^t$, where $N=5$, $t$ is a one-year period, and $E$ is the net value of Willich's projected annual earnings less his current annual wages of $7,820 (e.g., $E_1$ = ($31,140 - $7,820), $E_2$ = ($31,451.40 - $7,820), and so on).