IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| ROBERT WILLICH, | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION NO. |
| vs. | § | |
| | § | 6:16-cv-00340-RP-JCM |
| SANDERSON FARMS, INC. | § | |
| (PROCESSING DIVISION), | § | |
| *Defendant.* | § | |

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Robert Willich ("Plaintiff") files the following Motion for Attorneys' Fees and Expenses under Rule 54(d) of the FEDERAL RULES OF CIVIL PROCEDURE and asks this Court to award attorney fees and other related non-taxable costs, as authorized by TEXAS LABOR CODE § 21.259. In support thereof, Plaintiff shows the Court as follows:

I.  Introduction

Willich sued Defendant Sanderson Farms, Inc. (Processing Division) ("Defendant") for unlawfully discriminating against him because of his disability, failing to make reasonable accommodations for him, and unlawfully retaliating against him (Orig. Pet., Dkt. 1-1, at 6–7). On December 13, 2017, a jury found in Willich's favor on each and every claim, including a finding of exemplary damages (Verdict Form, Dkt. 58).

-1-

After the verdict, Plaintiff sought equitable relief from this Court in the form of front pay (Mtn. for Equit. Relief, Dkt. 59). On April 17, 2018, this Court issued an order granting an award of front pay to Plaintiff in the amount of $110,900.67 (Dkt. 65). On May 11, 2018, this Court entered judgment for Plaintiff in the amount of $230,865.74 (Dkt. 67). This Court further ordered that Willich file a motion for attorney's fees and nontaxable expenses within 14 days of the date of judgment (*Id.*). Pursuant to this Court's order, Rule 54(d)(2) of the FEDERAL RULES OF CIVIL PROCEDURE, and TEXAS LABOR CODE § 21.259, Willich asks the Court to award the attorneys' fees and expenses set forth below.

## II. Argument & Authorities

Willich prevailed on all his claims at trial, including an award of punitive damages. This Court subsequently granted Willich an award of front pay. The final judgment entered by this Court authorizes Willich to recover $230,865.74 against Defendant. Because Willich prevailed at trial, he is also entitled to recover reasonable attorneys' fees and costs under TEXAS LABOR CODE § 21.259. In this Motion, Willich requests a just award of attorneys' fees which includes a lodestar amount of $124,903.75 and an upward adjustment multiplier of 1.5, for a reasonable fee of $187,355.63. The exhibits to this Motion, as well as the detailed records provided, establish the propriety of the lodestar and upward adjustment.

### A. Overview of Current Standards

In a diversity case, state law controls whether attorney's fees are recoverable and what amount is reasonable. *See, e.g., Mathis v. Exxon Corp.*, 302 F.3d 448, 461

(5th Cir. 2002) ("State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision."); *see also Edwards v. Aaron Rents, Inc.*, 482 F.Supp.2d 803, 809-10 (W.D. Tex. 2006) (applying Texas law to determine whether, and in what amount, to award attorney's fees for claims brought under the Texas Commission on Human Rights Act). Chapter 21.259 of the TEXAS LABOR CODE provides for an award of attorneys' fees to the prevailing party as part of the costs of pursuing his claim. TEX. LAB. CODE § 21.259; *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). Under Chapter 21, courts utilize the lodestar method to calculate the amount of fees to award. *El Apple I*, 370 S.W.3d at 759.

## B.  The Lodestar Method

In *El Apple I, Ltd. v. Olivas*, the Texas Supreme Court explained that determining what constitutes a reasonable fee under the lodestar method is a two-step process. *El Apple I, Ltd*, 370 S.W.3d at 759. In step one, the court determines the reasonable number of hours spent by counsel on the case and a reasonable hourly rate for the work performed. *Id*. The court then multiplies the number of hours reasonably expended by the reasonable hourly rate to arrive at the lodestar. *Id*. In step two, if the lodestar does not reflect a reasonable fee, a multiplier may be applied. *Id*.

In setting forth this process, the court acknowledged and accepted the presumption that the lodestar produces a reasonable fee. *El Apple I, Ltd.*, 370 S.W.3d at 759. However, it recognized that "exceptional circumstances may justify

enhancements to the base lodestar." *Id*. That is, when a court calculates the base lodestar, "a court may raise or lower the lodestar amount if certain relevant factors indicate an adjustment is necessary." *Williams-Pyro, Inc. v. Barbour*, 408 S.W.3d 467, 483-84 (Tex. App.—El Paso 2013, pet. denied).

The relevant factors considered in determining whether an adjustment is necessary are found in the TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT, and include the following: "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered." *El Apple I, Ltd.*, 370 S.W.3d at 761.

These factors mirror those set out by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).[1] In *Johnson*, the Fifth

---

[1] The *Johnson* factors are: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the

Circuit explained that the lodestar may not be adjusted due to a *Johnson* factor if that factor was already considered in determining the base lodestar amount. *Johnson*, 488 S.W.2d at 717-19; *see also Dillard Dept. Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 412 (Tex. App.—El Paso 2002, pet. denied) (noting that if some of the *Johnson* factors are accounted for in the lodestar amount, they should not be considered when making adjustments).

Texas courts sometimes refer to federal caselaw as persuasive in measuring attorney's fees, including the adoption of the factors identified in *Johnson*. *See Dillard Dept. Stores, Inc*, 72 S.W.3d at 412 (adopting *Johnson* factors). But Texas courts have not wholly adopted federal law in this context. For example, Texas law, unlike federal law, allows the contingent nature of an attorney's fee to be considered in assessing a reasonable and necessary attorney's fee. *Dillard Dept. Stores*, 72 S.W.3d at 413, distinguishing *City of Burlington v. Dague*, 505 U.S. 557 (1992). Again, in a diversity case, when state and federal law differ, state law controls. *See Mathis*, 302 F.3d at 461.

## C. Calculating the Lodestar

### 1. The Hours Spent

Plaintiff's counsel successfully litigated and tried this case, achieving a favorable verdict on <u>all</u> of Plaintiff's claims. To do so, counsel spent significant time investigating the claims asserted, preparing and filing a charge of discrimination

---

amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the awards in similar cases. *Johnson*, 488 F.2d at 717-19; *Migis v. Pearle Vision, Inc*., 135 F.3d 1041, 1047 (5th Cir. 1998.

with the Texas Workforce Civil Rights Division, representing Plaintiff in the administrative process at the TWCCRD, preparing and filing this lawsuit, conducting written discovery, preparing for and taking six depositions, preparing Plaintiff for deposition and defending same, preparing for and attending mediation, preparing and filing pre-trial items, preparing for trial, trying the case to a verdict, filing post-verdict motions, obtaining a final judgment, and filing a motion for attorneys' fees and a bill of costs.

Here, Plaintiff seeks an attorneys' fee award of $187,355.63, which is a 1.5 multiplier of the lodestar amount of $124,903.75. That sum is calculated as follows:

| Name | Position | Years Licensed | Rate | Hours Expended/ Recorded | Hours after Billing Judgment | Lodestar |
|---|---|---|---|---|---|---|
| Joel Shields | Attorney | 14 | $235.00 | 416.75 | 398.5 | $93,647.50 |
| Ben Yelverton | Attorney | 5 | $215.00 | 100.75 | 93.5 | $20,102.50 |
| Tyler Talbert | Attorney | 4 | $205.00 | 31.25 | 27.25 | $5,586.25 |
| Mike Scanes | Attorney | 35 | $345.00 | 14.00 | 11.25 | $3,881.25 |
| Susan Eskew | Paralegal | 14 | $95.00 | 20.25 | 17.75 | $1,686.25 |
| Pam Edens | Legal Asst | N/A | $85.00 | 11.75 | 0.00 | 0.00 |
| Rosa Moore | Legal Asst | N/A | $50.00 | .25 | 0.00 | 0.00 |

Total Lodestar: <u>$124,903.75</u>

Total Billed Hours: <u>548.25</u>

To prove Willich's lodestar, Plaintiff attaches the Declaration of Joel Shields and detailed documentary proof demonstrating exactly how the hours Plaintiff's

counsel spent were devoted to particular tasks or categories of tasks. The declaration summarizes the hours spent.

Defendant Sanderson Farms hired a well-respected, national employment law firm with scores of lawyers, paralegals, and other specialists at their disposal. Defendant aggressively defended this case and the regional managing partner from the firm's Houston office was lead counsel during the case and at trial. Plaintiff's billing records, included as an exhibit to the attached Declaration, confirms the time billed was reasonable and necessary to address the challenging issues presented in the litigation. These time records document in detail the legal tasks performed by experienced and diligent lawyers who did their work knowing they would not be paid unless a successful outcome was achieved. The records show Plaintiff's counsel used appropriate staffing and billing judgment. "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Davis v. Perry*, 991 F. Supp. 2d 809, 830 (W.D. Tex. 2014) (quoting *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006)). Through the exercise of billing judgment, Plaintiff has reviewed all billing records and has written off 47 hours of time as either unproductive, excessive, or redundant. As such, Plaintiff's 548.25 hours are reasonable. *See* attached Declaration of Joel Shields.

2. **The Hourly Rates**

When awarding attorneys' fees, the Court may rely on its own observations of the litigation. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) ("Due to the

district court's superior knowledge of the facts . . ., the district court has broad discretion in setting the appropriate award of attorneys' fees."); *Cruz v. Beto*, 453 F. Supp. 905, 909 (S.D. Tex. 1977), aff'd, 603 F.2d 1178 (5th Cir. 1979). This Court has had a first-hand opportunity (e.g., contested motions, hearings on pre-trial motions, and during trial) to observe the nature and extent of the legal services provided by Plaintiff's attorneys.

Based upon their experience, the hourly rates of Plaintiff's attorneys set forth in the attached Declaration are reasonable, and should be awarded by this Court, especially considering other cases from the Western District of Texas where courts have approved hourly rates for experienced attorneys of around or above $300 per hour. *See Rodriguez v. Mech. Technical Servs., Inc.*, SA-12-cv-00710-DAE, Doc. 175,, 2015 U.S. Dist. LEXIS 164079 (W.D. Tex. Dec. 8, 2015) (finding $290 to be a reasonable hourly rate for an attorney in Austin, Texas with more than seven years of experience); *Clark v. Centene Corp.*, No. A-12-CA-174-SS, 2015 U.S. Dist. LEXIS 152166 (W.D. Tex. Nov. 10, 2015) (approving a rate of $425 to a lawyer licensed in 2004); *Structural Metals, Inc. v. S & C Elec. Co.*, SA-09-CV-984-XR, 2013 U.S. Dist. LEXIS 101516 (W.D. Tex. July 19, 2013), *aff'd*, 590 F. App'x 298 (5th Cir. 2014) (approving hourly rates ranging from $296 per hour to over $450 per hour, depending on the experience of the specific attorney); *Ibarra v. UPS (Ohio)*, No. MO-10-CA-113, 2013 U.S. Dist. LEXIS 194401, at *5 (W.D. Tex. 2013) (concluding attorney was entitled to a "premium" by virtue of her status as a certified specialist in employment law and awarding an hourly rate of $325 per hour). *See also Singer*

*v. City of Waco*, No. W-99-CA-296, 2001 U.S. Dist. LEXIS 27106, at *11 (W.D. Tex. 2001) (17 years ago finding $200 per hour to be within the reasonable and customary range of fees charged in employment cases in the Western District of Texas, Waco Division).

To adjust for inflation, deferred payment, and unpaid interest, this Court may award attorneys' fees at the current hourly rate instead of historic hourly rates charged during the litigation process. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989) (holding that plaintiffs are entitled to "an appropriate adjustment for delay in payment-whether by the application of current rather than historic hourly rates or otherwise."). As such, Plaintiff requests that this court award Plaintiff the current hourly rate, as reflected in the attached Declaration and supporting documentation, when calculating the lodestar.

D.  The Applicable *Johnson* Factors

Plaintiff seeks an upward adjustment of the lodestar based on four of the *Johnson* factors.

1.  Whether the fee was fixed or contingent

Plaintiff's counsel took this case on a contingent fee basis. Under Texas law, taking the case on a contingent fee is an appropriate consideration in enhancing a lodestar. *City of San Antonio v. Hotels.com, L.P.*, No. 5-06-CV-381-OLG, 2017 U.S. Dist. LEXIS 58384, at *47-48 (W.D. Tex. 2017) (finding that an unenhanced lodestar did not reflect the high risk borne by the contingent nature of the litigation and enhancing the lodestar by a 2.5 multiplier); *Williams-Pyro, Inc. v. Barbour*, 408

S.W.3d 467, 483-84 (Tex. App.—El Paso 2013, pet. denied); *Stratton v. XTO Energy Inc.*, No. 02-10-00483CV, 2012 Tex. App. LEXIS 1089 (Tex. App.—Fort Worth Feb. 9, 2012, no pet.) (holding that a multiplier of 2.17 was appropriate given, among other things, "the high risk borne by its contingent nature" and the "undesirability of the litigation"). This policy makes sense given the uncertainty of collection that exists before the legal services have been rendered. In fact, if the lodestar is not enhanced to provide for more than an hourly fee in such cases, the firm is bearing a substantial risk just to earn their normal hourly rate.

"[C]ontingency agreements aid plaintiffs who cannot afford to pay a lawyer up-front and compensate the attorney for the risk that he or she will receive no fee." *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, No. H-11-3061, 2015 U.S. Dist. LEXIS 111500, at *33 (S.D. Tex. 2015) (applying Texas law and adjusting the lodestar by a multiplier of 3 because of the contingent nature of the case and its undesirability). Because of the contingent nature of the case and the uncertainty of collection before the legal services have been rendered, this factor supports an enhancement of the lodestar under Texas law.

### 2. The amount involved and results obtained

Whether under federal or Texas state law, the "degree of success obtained" is "the most critical factor" in determining the reasonableness of a fee award. *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 548 (Tex. 2009); *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). Willich prevailed on all three claims he asserted under Chapter 21 of the TEXAS LABOR CODE, including claims for: (1) unlawfully

discriminating against Willich because of his disability, (2) failing to make reasonable accommodations for Willich, and (3) unlawfully retaliating against him for engaging in protected activity. The jury also awarded punitive damages in an amount almost equal to his back pay and compensatory damages. Post-verdict Plaintiff sought equitable relief from this Court in the form of front pay. This Court granted front pay in the amount of $110,900.67, and subsequently entered a final judgment for Plaintiff in the amount of $230,865.74. This is a tremendous result especially considering how little Defendant was willing to pay to resolve the case.

More particularly, in this Court's Scheduling Order, entered November 17, 2016, the Court ordered the parties to exchange written offers of settlement and "to retain the written offers of settlement and response as the Court will use these in assessing attorneys' fees and costs at the conclusion of the trial." (Dkt. No. 8). The following events then occurred during the case:

- **12-6-2016**. Plaintiff submitted a written offer of settlement for $125,000. *See* Exhibit 4.

- **4-6-2017**. Defendant e-mailed Plaintiff stating that "Sanderson Farms' position regarding settlement is that it is not prepared to extend a monetary settlement at this time." *See id*.

- **8-2-2017**. Defendant communicated a verbal offer of settlement to Plaintiff of $1,000.

- **11-16-2017**. The parties mediated the case with each side paying $1,000 for the mediator. The highest verbal offer made by Defendant was $2,500.

- **11-21-2017**. Plaintiff sent a written offer to settle for $45,000. *See id*. Defendant did not bother responding.

- **11-30-2017**. Plaintiff reiterated the same offer and communicated that offer would be withdrawn if not accepted before 3:00 p.m., December 8, 2017. *See id.* Defendant did not bother responding.

In fact, Defendant has <u>never</u> provided a written settlement offer to Plaintiff at all, even though such is required by Order of the Court. When compared to the highest offer made by Defendant, the final judgment is over 92 times higher. While Defendant completely refused to engage in reasonable settlement negotiations, Plaintiff's offers were very reasonable. Indeed, the final judgment is more than five times *higher* than Plaintiff's final pre-trial offer. Plaintiff was highly successful in this case. The amounts involved, and results obtained, support an enhancement of the lodestar.

### 3. The skill required to properly perform the legal service

This was a difficult case to try because of Defendant's conduct in that it required a high level of skill to adjust trial strategy when Defendant delivered documents to Plaintiff's counsel on the eve of trial. On Saturday, December, 9, 2017, at 3:00 p.m., less than 48 hours before trial, Defendant's counsel e-mailed four *critical* written statements from Defendant's employees that had not been produced in the previous 13 months of litigation. These statements were written and signed by the employees at or near the time of Plaintiff's termination in October 2015, yet Sanderson Farms did not produce them to Plaintiff until the weekend before Monday's trial. This last-minute "discovery" by Defendant's HR Manager changed the dynamics of trial preparation and required Plaintiff to substantially modify its

trial strategy on short notice. The skill required to properly perform the legal services in this case support an enhancement of the lodestar.

### 4. The undesirability of the case

S&R has represented Plaintiff during this litigation for almost two and one-half years. Our firm has been able to develop a close working relationship with Plaintiff. He has been an excellent client and is a good man. The jury saw that too. However, many attorneys would not have taken this case. While Plaintiff has been sober since 2003, Plaintiff has an extensive criminal history involving multiple DUIs and a burglary. He spent over six years in state prison. As such, this case was not desirable from the outset because of the possibility that Plaintiff's extensive criminal history would be introduced as evidence at trial to impeach his credibility. This case was undesirable to take because of the risk and uncertainty associated with his criminal convictions. This factor supports an enhancement of the lodestar.

### E. *El Apple I* strongly supports an enhancement of the lodestar

As discussed above, the Texas Supreme Court has established that the lodestar method is appropriate in cases under Chapter 21, including an enhancement of the lodestar. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 764 (Tex. 2012). Specifically, *El Apple I* cites to the class action rule under Rule 42(i)(1) of the TEXAS RULES OF CIVIL PROCEDURE as "authorizing the trial court to make attorney fees awards 'in the range of 25% to 400% of the lodestar figure.'" *Id*. While noting that the class action rule does not expressly apply to cases brought under Chapter 21, *El Apple I* explains that "the lodestar method should not vary from

claim to claim, that is, the formula should be the same in [Chapter 21 actions] as in class actions." *Id*. The court goes on to hold: "When appropriate under the particular circumstances of the case, a trial court may therefore use a multiplier to increase or decrease the lodestar figure to approximate a reasonable fee." *Id*.

In this case, because of the contingency fee, the undesirability of the case, the skill required to properly perform legal services, and the amount involved and results obtained, the *Johnson* factors and *El Apple I* strongly support an enhancement of the lodestar.

## F. Plaintiff is entitled to recover taxable costs of court

Pursuant to Rule 54(d)(1) and 28 U.S.C. 1920, Plaintiff seeks the recovery of his taxable court costs in the amount of $3,963.28. In support of same, Plaintiff has filed his *Bill of Costs* and *Itemized Bill of Costs* contemporaneously with this Motion.

## G. Plaintiff is entitled to recover non-taxable costs related to case

Plaintiff requests an award of non-taxable costs in the amount of $1,095.28. A true and correct copy of S&R's non-taxable expenses is attached to the Declaration. The three non-taxable items include: (1) the cost of a conference call this Court ordered the Plaintiff to arrange for the benefit of the parties and Court (see Dkt. No. 6); (2) the cost of medical records and supporting affidavits which Plaintiff used in the case as expert testimony (see FED. R. CIV. 26(b)(4)(E)); and (3) the cost of mediation—Defendant forced Plaintiff to incur a $1,000 mediation fee for a full-day mediation, and only increased its offer from $1,000 to $2,500 during the mediation

(which was a net increase of $500 because of the cost of the mediation). Had Defendant Sanderson Farms been transparent about its unwillingness to engage in reasonable settlement negotiations, then the parties could have foregone mediation and Plaintiff could have saved the $1,000. This cost should be shifted to Defendant. These are reasonable and necessary costs in pursuing Plaintiff's claims in this case and Plaintiff requests an award of these expenses.

### H. Plaintiff seeks recovery of contingent post-judgment and appellate fees

Plaintiff anticipates devoting additional attorney time after the filing of this Motion. For example, should Defendant file a Response to this Motion, preparing a Reply will result in legal fees of at least $5,875 (25 hours of attorney time). Should Defendant file a Renewed JMOL, preparing a Response will result in legal fees of at least $10,575 (45 hours of attorney time). Plaintiff respectfully requests a conditional award of these fees.

Plaintiff also respectfully requests an award of appellate fees conditioned on the filing of a Notice of Appeal and Plaintiff prevailing in an appeal. Plaintiff will likely spend an additional 125 hours reviewing any appellate brief, post-trial motions, preparing an appellee brief, and traveling to New Orleans for oral argument. Plaintiff seeks an award of $29,375 as a reasonable additur for further appellate fees if this matter is unsuccessfully appealed to the United States Court of Appeals for the Fifth Circuit and not appealed further.

### III. Conclusion

In sum, Plaintiff requests that he be awarded all the attorneys' fees that are verified and proven in the attached Declaration. Plaintiff also requests all his reasonable expenses and costs.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that the Court award reasonable and necessary attorneys' fees along with non-taxable expenses and costs of court; and that Plaintiff be granted all further relief whether in law or in equity upon which he may show himself justly entitled.

Respectfully submitted,

*/s/ Joel S. Shields*
Michael L. Scanes
State Bar No. 17701000
E-mail: scanes@scanesrouth.com
Joel S. Shields
State Bar No. 24041907
E-mail: shields@scanesrouth.com
SCANES & ROUTH, LLP
7901 Fish Pond Road, Suite 200
Waco, Texas 76702
254/399-8788
254/399-8780 - fax

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF CONFERENCE**

I hereby certify that on the 25th day of May, 2018, I conferred with Defendant's counsel in conformity with Local Rule CV-7(j)(1) for the purpose of attempting to resolve all disputed issues relating to attorneys' fees prior to making this application. Defendant is opposed to this Motion.

*/s/ Joel S. Shields*
Joel S. Shields

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of May, 2018, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Joel S. Shields*
Joel S. Shields