IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION



| | | |
|---|---|---|
| ROBERT WILLICH,<br>*Plaintiff* | § § § § | |
| -vs- | § § | |
| SANDERSON FARMS, INC.<br>(PROCESSING DIVISION),<br>*Defendant* | § § § § § | 6:16-CV-00340-ADA-JCM |

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES

Before the Court is Plaintiff's Motion for Attorneys' Fees and Expenses [ECF No. 69], filed on May 25, 2018. Defendant filed a Response to Plaintiff's Motion for Attorneys' Fees and Expenses [ECF No. 74], on June 15, 2018. Plaintiff filed a Reply to Defendant's Response [ECF No. 76] on June 22, 2018. The Court has carefully examined the relevant documents and the entire case file and is of the opinion that Plaintiff's Motion for Attorneys' Fees and Expenses should be **GRANTED IN PART** and **DENIED IN PART** for the following reasons.

### BACKGROUND

On December 13, 2017, Plaintiff Robert Willich prevailed at trial against Defendant Sanderson Farms, Inc. for unlawful discrimination. Pl.'s Mot. for Att'y Fees and Expenses at 1. On May 11, 2018, this Court entered judgment for Willich in the amount of $230,865.74. *Id.* at 2. On May 25, 2018, Plaintiff submitted an application for an award of attorneys' fees under the Texas Labor Code § 21.259. *Id.* Willich asks the Court to award: (1) $124,903.75 as reasonable attorneys' fees under the lodestar calculation; (2) an upward adjustment of the lodestar, which would result in an additional $62,451.88; (3) $3,963.28 in taxable court costs; (4) $1,095.28 in non-taxable costs related to this case; and (5) $16,450 for post-judgment attorneys' fees. *Id.* at 16.

**STANDARD OF REVIEW**

In diversity cases such as these, attorney's fee awards, which are "entrusted to the sound discretion of the trial court," are governed by state law. *Quanta Serv. Inc. v. Am. Admin. Grp. Inc.*, 384 Fed. Appx. 291, 298 (5th Cir. 2008). Where Texas law provides the rule of decision on the underlying cause of action, Texas law also governs both the award of and the reasonableness of attorney fees. *Mid–Continent Cas. Co. v. Kipp Flores Architects*, LLC, No. 1-13-CV-60-JRN, 2014 WL 12480270 at *1 (W.D. Tex. June 24, 2014) (Citing *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002)). Although Texas procedural rules govern the determination of attorney's fees in a suit brought under state law, Texas courts have looked to federal law in applying Texas statutes, including § 21.259(a) of the Texas Labor Code. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012).

In a proceeding under the Texas Labor Code, a court may allow the prevailing party, reasonable attorney's fees as part of the costs. TEX. LAB. CODE ANN. § 21.259. Under Chapter 21, courts utilize the lodestar method to calculate the amount of fees to award. *El Apple I, Ltd.*, 370 S.W.3d at 760. Calculating the lodestar involves a two-step process. *Jimenez v. Wood Cty.*, 621 F.3d 372, 379 (5th Cir. 2010), *on reh'g en banc*, 660 F.3d 841 (5th Cir. 2011); *El Apple I, Ltd.*, 370 S.W.3d at 760.[1]

First, a court must determine the lodestar which is "equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Id.* When determining the reasonable hours spent by counsel in the case, a court should exclude all time that is excessive, duplicative, or inadequately documented. *Jimenez*, 621 F.3d at 379. The party seeking attorney's fees bears "the burden of documenting the hours expended on the litigation and the value of those hours." *El Apple I, Ltd.*, 370 S.W.3d at 761. This means such party is responsible for

---

[1] Part V of *Jimenez*, 621 F.3d at 379–80, which discussed the Fifth Circuit's method for calculating attorney's fees was reinstated on rehearing en banc. *See Jimenez*, 660 F.3d at 844 n.1.

proving that he or she exercised billing judgment in presenting its request for fees to a court. *Id.* at 762 (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). A party should diligently document the hours charged and the hours written off as unproductive, excessive, or redundant. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006); *El Apple I, Ltd.*, 370 S.W.3d at 762 (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).

Once the lodestar figure is determined, the court may apply a multiplier if relevant factors suggest that an adjustment is necessary to produce a reasonable fee for the case. *Jimenez*, 621 F.3d 372 at 380; *El Apple I, Ltd.*, 370 S.W.3d at 760. The relevant factors are:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Jimenez*, 621 F.3d at 380; *El Apple I, Ltd.*, 370 S.W.3d at 761 n.1 ("*Arthur Andersen's* eight-factor test is similar to the test used by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1975), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)). Four of these factors are presumed to be *fully* reflected in the lodestar

calculation. These are: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained from the litigation. *OneBeacon Ins. Co. v. T. Wade Welch & Assoc.*, No. H-11-3061, 2015 WL 5021954, at *9 (S.D. Tex. Aug. 24, 2015).

When determining whether a multiplier should be applied, courts must keep in mind that there is a "strong presumption" that the lodestar represents the "reasonable" fee. *Perdue v. Kenny ex rel. Winn*, 559 U.S. 542, 552 (2010); *Jimenez*, 621 F.3d at 380; *El Apple I, Ltd.*, 370 S.W.3d at 765. Accordingly, an adjustment should be made only when "exceptional circumstances" have been shown justifying applying a multiplier. *El Apple I, Ltd.*, 370 S.W.3d at 765. Finally, an adjustment may be made only if the *Johnson* factor offered to justify enhancement has *not* already been accounted for in the lodestar. *Perdue*, 559 U.S. at 553 ("[W]e have noted that 'the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee'"); *OneBeacon Ins. Co.*, 2015 WL 5021954, at *9. In other words, a court should "should not consider any of the same factors that it has already considered when determining the lodestar amount to determine whether to adjust the amount using the *Johnson* factors." *OneBeacon Ins. Co.*, 2015 WL 5021954 at *9 (citing *Shipes v. Trinity Indus.*, 987 F.2d 311 (5th Cir. 1993)).

## ANALYSIS

Sanderson Farms concedes the rates set forth in Willich's motion are reasonable. Def.'s Resp. at 2. As a result, the Court's analysis will focus on two issues. First, the Court will address the number hours spent by Willich's counsel. Lastly, the Court will address whether a multiplier should be applied to the lodestar.

### A. The Number of Hours Spent by Willich's Counsel's was not Excessive

To establish the number of hours reasonably spent on the case, the fee application and record must include proof documenting the performance of specific tasks, the time required for those

4

tasks, the person who performed the work, and his or her specific rate. *El Apple*, 370 S.W.3d at 765. In support of Plaintiff's Motion for Attorneys' Fees and Expenses, Willich provides documents showing the date of legal services rendered, detailed descriptions of the services rendered, hours expended, and rates charged. Pl.'s Mot. for Att'y Fees and Expenses, Ex. 2. Willich calculates 595 total hours expended among four attorneys, a paralegal, and administrative staff. *Id.* at 6. Plaintiff exercised diligent billing judgment by reviewing the hours billed and writing off forty-seven hours as unproductive time, resulting in 548.25 total hours. *Id.* at 7.

### a. The Work Performed by Mike Scanes and Tyler Talbert was Reasonable and Necessary

Sanderson Farms argues that Willich's case did not require four lawyers. According to Sanderson Farms, the case was not overly complicated, and the work of Mike Scanes and Tyler Talbert was duplicative. Def.'s Resp. at 2. The Court disagrees.

First, the work by Mike Scanes was not duplicative. Mike Scanes—a senior partner and 35-year seasoned trial lawyer—provided insight and guidance to his associates and junior partners. This type of oversight by a senior partner is common amongst law firms and therefore reasonable. Furthermore, the hours billed by Scanes, after exercising billing judgment, equal "roughly 30 minutes of legal work each month for the 29 months of the case." Pl.'s Reply at 2. Sanderson Farms fails to cite any reasonable authority explaining why 30 minutes of work a month, involving work that is common amongst most senior partners, is unreasonable.

The Court also finds that the work by Tyler Talbert was not duplicative. Sanderson Farms argues that much of Talbert's work was dedicated to post-trial motions, which Shields had already dedicated significant time to. However, it is not unreasonable, and in fact quite common, to include junior associates to aid with the firm's workload. This is precisely what Willich's counsel did with Talbert, an attorney with four years' experience. Moreover, Willich's counsel exercised billing judgment regarding Talbert's work. After exercising judgment, Talbert accounted for just under five

5

(5) percent of the total hours billed. Consequently, merely stating that a junior associate assisted a more senior associate on post-trial motions is not enough to establish that the time spent was unreasonable or unnecessary. Because of the foregoing reasoning, the Court finds that the work performed by Scanes and Talbert was reasonable and necessary and not duplicative or excessive.

### b. The Work Performed by Joel Shields and Ben Yelverton

Sanderson Farms argues the time spent by Willich's counsel in preparing for trial and the pre-trial conference is excessive. Def.'s Resp. at 3. However, Sanderson Farms fails to provide the Court with any relevant authority supporting their claims. Without any relevant authority on which this Court can rely, the Court fails to see why it should reduce the time spent by Shields and Yelverton.

Moreover, Sanderson Farms fails to explain to the Court what was excessive about the twenty-five (25) hours spent by Shields and Yelverton in "trial prep." Without any reason for why this time is excessive beyond a conclusory statement, the Court will not reduce the time spent by Shields and Yelverton. Lastly, regarding the time spent on the pre-trial hearing, the Court believes the time spent was reasonable since both attorneys performed different roles at the hearing. Because of the foregoing, the Court finds that the work performed by Shields and Yelverton was reasonable and necessary and not duplicative or excessive.

### B. A Multiplier Should not be Applied to the Lodestar

Willich's counsel seeks an upward adjustment of the lodestar based on four of the *Johnson* factors: (1) the skill required to perform the legal service; (2) undesirability of the case; (3) the amount involved and the results obtained; and (4) whether the fee is fixed or contingent. Pl.'s Mot. for Att'y Fees and Expenses at 9–13. The Court will address each factor in turn.

### 1. The skill required to perform the legal service.

Willich's counsel argues that this was a difficult case primarily because they had to adjust their trial strategy when Sanderson Farms delivered documents to them on the eve of trial. *Id.* at 12. The

6

Court finds this factor does not justify adjusting the lodestar. The additional time Willich's counsel needed to adjust their trial strategy is already reflected in the lodestar.

The Fifth Circuit addressed this same issue in *Shipes v. Trinity Industries*. In *Shipes*, counsel for the appellant argued that enhancement was justified because of "'special time limits' imposed by the defendant's necessitating that Shipes's attorney evaluate last-minute data shortly before trial." 987 F.2d at 321. The court held that this did not support enhancing the lodestar since evaluating last-minute data "is not an abnormal occurrence . . . and is accounted for by the additionally required hours that are reflected in the lodestar." *Id.* The Court finds the reasoning applied in *Shipes* is also applicable to Willich's case. The additional time spent by Willich's counsel is already reflected in the lodestar and evaluating last-minute data before trial is not abnormal; therefore, the Court finds that this factor does not justify enhancement.

2. **Undesirability of the case**

Willich's counsel argues the case was undesirable due to Willich's criminal history involving multiple DUIs and burglary, for which he spent six years in state prison. Pl.'s Mot. for Att'y Fees and Expenses at 13. Willich's counsel believes this criminal history would have dissuaded many attorneys from taking this case. Accordingly, Willich's counsel believes this justifies enhancing the lodestar. The Court does not believe this factor justified enhancing the lodestar because there is no evidence Willich's counsel risked diminished reputation or loss of future business.

The undesirability factor refers to hardships an attorney may face in his own community for representing a client who is not "pleasantly received by the community." *Johnson*, 488 F.2d at 719 (explaining that civil rights attorneys—especially during the time *Johnson* was decided—faced hardships in their communities because of their desire to help civil rights litigants). In other words, the case should threaten the attorney who takes on the case with either damage of reputation or loss

of income because of who he or she chooses to represent. Willich's counsel fails to provide such evidence to the Court.

Absent any other evidence, Willich's criminal history was simply a bad fact that might have been introduced at trial—this is not uncommon. As Sanderson Farms points out, there are numerous civil litigants with a criminal history. As a result, the mere fact a litigant has a criminal history does not automatically make the case undesirable. Because of the foregoing, the Court finds that the undesirability of the case does not justify enhancement.

### 3.  The amount involved and the results obtained

Willich's counsel argues the results obtained justify enhancement because: (1) Willich prevailed on all three claims; and (2) the final judgment was more than five times higher than Willich's final pre-trial offer. Pl.'s Mot. for Att'y Fees and Expenses at 12–13. This factor refers to a plaintiff's overall level of success. *City of San Antonio v. Hotels.com, L.P.*, No. 5-06-CV-381-OLG, 2017 WL 1382553, at *14 (W.D. Tex. Apr. 17, 2017). Although Willich's counsel achieved a desirable result, this is not the end of the analysis. As explained above, there is a *strong* presumption that the lodestar represents a reasonable fee. *Perdue*, 559 U.S. at 552; *Jimenez*, 621 F.3d at 380; *El Apple I, Ltd.*, 370 S.W.3d at 765. To rebut this presumption, "exceptional circumstances" need to be shown. *See Johnson*, 488 F.2d at 716 (explaining that while the amount of damages in a case should be considered, courts should still determine the decision's overall effect on the law); *El Apple I, Ltd.*, 370 S.W.3d at 765. The Court finds Willich's counsel has provided no evidence of "exceptional circumstances."

First, in cases where the amount involved and the results obtained justified an upwards enhancement abnormal and exceptional results were involved. For example, in *Hotels.com*, plaintiff's counsel helped their clients win a $84,123,089 judgment—this was "'the largest judgment secured by any state or municipality' in a suit against Defendants to recover hotel occupancy taxes." *Hotels.com*,

L.P., 2017 WL 1382553, at *14. Similarly, in *Stratton v. XTO Energy Inc.*, plaintiff's expert witness testified "he [had] found only one other instance of plaintiffs' counsel 'achieving a similar type and level of disclosure.'" No. 02-10-483-CV, 2012 WL 407385, at *7 (Tex. App.—Fort Worth Feb. 9, 2012, no pet.). In short, the results obtained in these cases were anything but ordinary and plaintiff's counsel in both cases provided evidence to show this fact. The Court does not mean to imply that this factor is only applicable when a groundbreaking result is obtained; however, Willich's counsel has provided *no* evidence to provide any sort of context for the award received (e.g., is it uncommon for plaintiffs in these types of cases to succeed on all their claims or to be awarded the amount Willich received). As a result, the Court has no way of discerning whether this case involved "exceptional circumstances."

The Court is unpersuaded that because the final judgment is over 92 times higher than Sanderson Farms' highest settlement offer that an enhancement is justified. The Fifth Circuit has shown reluctance to adjust the lodestar based off a party's mistaken evaluation of a case. *See, e.g., Singer v. City of Waco, Tex.*, 324 F.3d 813, 830 (5th Cir. 2003) (upholding district court's decision not to reduce lodestar amount due to disparity between amount sought and actual amount awarded). The Court is also reluctant to do so since it is not uncommon for parties to value their cases differently and because Willich's counsel has provided no relevant authority stating otherwise.[2] Because of the foregoing, the Court finds the amount involved and the results obtained do not justify an enhancement.

---

[2] Punishing a party for misevaluating their case might dissuade future settlement negotiations for fear of having the lodestar enhanced if they are not the prevailing party. Settlement negotiations are encouraged since they have the potential to save time and money for all parties involved. However, defendants might be reluctant to enter into settlement talks for fear of having the lodestar enhanced because of their honest misevaluation of their case. The same rationale applies to plaintiffs. Plaintiffs' counsel would likely avoid settlement negotiations for fear of having their lodestar reduced because of a mistaken evaluation. *See Singer*, 324 F.3d at 830 (upholding district court's decision not to reduce lodestar amount due to disparity between amount sought and actual amount awarded).

### 4. Whether the fee is fixed or contingent

Willich's counsel argues that the lodestar should be enhanced because they took this case on a contingent basis. Pl.'s Mot. for Att'y Fees and Expenses at 9.[3] The Court has rejected the other three factors Willich's counsel relies upon to justify enhancement. As a result, if an enhancement is justified, it must rely solely on whether the fee is fixed or contingent. The Court finds that this factor does not justify enhancement because Willich's counsel has failed to present "exceptional circumstances" rebutting the presumption that the lodestar produces a reasonable fee.

Willich's counsel cites to *City of San Antonio v. Hotels.com, L.P.* to support enhancement based on the contingent nature of this case. Pl.'s Mot. for Att'y Fees and Expenses at 9. Plaintiffs' counsel in *Hotels.com, L.P.* did work on a contingency fee basis for *172 cities* and entered into a *decade-long* litigation, which involved years of filing post-trial motions and calculating unpaid taxes before the court entered final judgment. *Hotels.com, L.P.*, 2017 WL 1382553, at *14. The defendants fought them "every step of the way" for that entire decade. *Id.* The risks involved were reinforced when the City of Houston opted out of the class and lost on the merits. *Id.* In short, the plaintiffs' case was unusually complex and resulted plaintiffs' counsel assuming a "substantial risk that the litigation would yield no recover, leaving them uncompensated." *Id.* Because of these circumstances, the *Hotels.com* court believed the unenhanced lodestar did not reflect the high risk borne by counsel. *Id.*

*Stratton v. XTO Energy Inc.* is also cited to by Willich's counsel to support enhancement. The *Stratton* court approved a multiplier of 2.17 because such a multiplier "is not unusual in large, complex, and expedited cases." 2012 WL 407385 at *9. However, the mere fact that the case was taken on a contingent nature did not justify enhancement. In addition to the contingent nature of

---

[3] It appears undisputed by both parties that the contingent fee nature of a case is an appropriate enhancement based on the *Johnson* factors. *Jackson v. Host Int'l, Inc.*, 426 F. App'x 215, 227–28 (5th Cir. 2011).

the case, the court found enhancement appropriate because of the exceptional results achieved, the undesirability of the case, and the fact that the requested fee was comparable to similar cases. *Id.*[4]

Willich's case is unlike *Hotels.com* and *Stratton*. Unlike *Hotels.com* and *Stratton*, the issues litigated in Willich's case were not unusually complex. Instead, Willich's case involved issues that are common to most employment discrimination cases. Moreover, dissimilar to *Hotels.com*, Willich's case did not involve protracted litigation. Finally, *Hotels.com* and *Stratton* did not rely *solely* on the contingent fee nature to justify enhancement of the lodestar—other factors were relied upon to justify enhancement. *Hotels.com, L.P.*, 2017 WL 1382553, at *14–15; *Stratton*, 2012 WL 407385 at *7–9.[5] Because of the foregoing, the Court finds that the contingent nature of this case does not justify enhancement.

5. **Conclusion**

The Court takes seriously "the strong presumption that the lodestar produces a reasonable fee." *Hotels.com, L.P.*, 2017 WL 1382553, at *13; *El Apple I, Ltd.*, 370 S.W.3d at 765. There is no doubt that Willich's counsel performed admirably for their client; however, an admirable performance does not always justify enhancement of the lodestar. Extraordinary circumstances need to be shown in order to rebut the presumption that the lodestar produces a reasonable fee. *Hotels.com, L.P.*, 2017 WL 1382553, at *13; *El Apple I, Ltd.*, 370 S.W.3d at 765. The Court finds that Willich's counsel has failed to prove such circumstances; therefore, an enhancement of the lodestar is denied.

---

[4] Willich's counsel also cites *Williams-Pyro, Inc. v. Barbour*, 408 S.W.3d 467, 483–84 (Tex. App.—El Paso 2013, pet. denied). *Barbour* provides little guidance on what constitutes "exceptional circumstances" and whether an enhancement can be justified by only the contingency fee factor. Because of this, the Court finds that *Barbour* is unhelpful in helping determine how Willich's Motion should be ruled on.

[5] The Texas Supreme Court is silent on whether the contingent fee factor alone can be used to justify enhancing the lodestar. *El Apple*, 370 S.W.3d at 764. In *El Apple*, the appellant argued the trial court erred in basing its decision to enhance the lodestar *solely* on the contingent nature of the fee. *Id.* The Texas Supreme Court did not address this issue because they did not have a legitimate base lodestar from which to work from. *Id.* at 765. Regardless, the Court finds that Willich has failed to show "exceptional circumstances" that justify enhancing the lodestar.

### C. Post-judgment Fees, and Appellate Fees

Willich's counsel seeks reasonable attorney's fees for (1) preparing a Reply to Sanderson Farms' Response to this Motion; (2) preparing a Response to Sanderson Farms' Renewed JMOL; and (3) appellate fees conditioned on the filing of a Notice of Appeal and Willich prevailing in an appeal. Regarding appellate fees, Willich's counsel, in their Reply, reserved the right to file a supplemental motion for attorney's fees upon remand from appeal; therefore, the Court will not address appellate fees. Pl.'s Reply at 7.

Sanderson Farms' argued reasonable attorney's fees for (1) preparing a Reply to Sanderson Farms' Response to this Motion; and (2) preparing a Response to Sanderson Farms' Renewed JMOL should not be granted because Willich's counsel had not proven them. However, as of today, those fees are no longer conditional. Willich's counsel did prepare a Reply to Sanderson Farms' Response to this Motion and prepared a Response to Sanderson Farms' Renewed JMOL. The Court will therefore award reasonable attorney's fees for the Reply to Sanderson Farms' Response to this Motion and their Response to Sanderson Farms' Renewed JMOL as requested in their Motion. Pl.'s Mot. for Att'y Fees and Expenses, Attach. 1 at 5–6.

### D. Other Costs

Willich's counsel argues that they are entitled to $3,963.28 in taxable court costs under Federal Rules of Civil Procedure Rule 54(d)(1) and 28 U.S.C. 1920. Pl.'s Mot. for Att'y Fees and Expenses at 14. Moreover, they argue they are entitled to $1,095.28 in non-taxable costs related to the case. *Id.* Costs other than attorney's fees should be allowed to the prevailing party. FED. R. CIV. P. 54(d)(1). Willich's counsel provided a *Bill of Costs and Itemized Bill of Costs* supporting the $3,963.28 amount and a copy of its non-taxable expenses attached to its Declaration. Sanderson Farms' does not challenge these costs in its response. Therefore, the requested amount of $5,058.56 in costs other than attorneys' fees is awarded.

## CONCLUSION

For the reasons set forth above, it is therefore **ORDERED** that Plaintiff's Motion for Attorneys' Fees and Expenses is **GRANTED IN PART** and **DENIED IN PART**. Sanderson Farms shall pay Willich's counsel **$146,412.31**, which consists of: (1) **$124,903.75** for reasonable attorneys' fees, which is the base lodestar amount; (2) **$3,963.28** in taxable court costs; (3) **$1,095.28** in non-taxable costs related to this case; and (4) **$16,450** for post-judgment fees. Willich's request for an upward adjustment of the lodestar is **DENIED**.

**SIGNED** this 3rd day of December 2018.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE